# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| **NARGES BABA AHMADI**<br>**Hufnerstraße 1B, 22083 Hamburg,**<br>**Germany,** | ) COMPLAINT FOR DECLARATORY<br>) AND INJUNCTIVE RELIEF AND<br>) FOR WRIT OF MANDAMUS<br>) |
| **and** | ) Immigration Case<br>) |
| **YASAMAN ZOLFIMOSELO**<br>**Apartment 34/6, Am Campus 1, 3400**<br>**Klosterneuburg, Austria,** | ) Agency Case Nos.<br>)<br>) AA00CNAAX3 |
| **and** | )<br>) AA00CBWOPF<br>) |
| **ALIPASHA MONTASERI**<br>**Apartment 34/6, Am Campus 1, 3400**<br>**Klosterneuburg, Austria,** | ) AA00CFHA39<br>)<br>) AA00CNWRC5 |
| **and** | )<br>) AA00CB4UAP<br>) |
| **ATEFEH SADAT JAMALI ZADEH**<br>**No. 10 Dolat Abadi Alley, North**<br>**Sabalan, Sabalan, Tehran, Iran,** | ) AA00CG2ADR<br>)<br>) AA00DGNDPT |
| **and** | )<br>) AA00CROC0H |
| **NAVID DEHBAN**<br>**No. 5, Floor 1, Arjmand Alley, Northern**<br>**Kargar St, Tehran, Iran,** | )<br>)<br>)<br>) |
| **and** | )<br>) |
| **ARYA JALALI**<br>**16 Shishegaran, Beheshti 16 St, Lahijan,**<br>**Iran,** | )<br>)<br>) |
| **and** | )<br>) |
| **SINA ELAHI MANESH**<br>**Second Floor, No. 25, Koohestan Street,**<br>**Esteghlal Street, Hengam Street,**<br>**Tehran, Iran,** | )<br>)<br>)<br>) |
| **and** | )<br>) |
| **MOHAMMADALI** | )<br>) |

| | |
|---|---|
| **MOHAMMADKHANI**<br>**3rd Park Aval Dd, Sousan Alley,**<br>**Ghasemi St, Aghdasieh, Tehran, Iran,**<br><br>            Plaintiffs,<br>    vs.<br><br>**MARCO RUBIO, Secretary of State,**<br>**U.S. Department of State, in his official**<br>**capacity as well as his successors and**<br>**assigns, c/o The Executive Office,**<br>**Office of the Legal Adviser,**<br>**600 19th Street NW, Suite 5.600,**<br>**Washington, D.C. 20522,**<br><br>        **and**<br><br>**PAMELA BONDI, Attorney General**<br>**of the United States, in her official**<br>**capacity as well as her successors and**<br>**assigns, U.S. Department of Justice,**<br>**950 Pennsylvania Ave, N.W.,**<br>**Washington, D.C. 20530,**<br><br>        **and**<br><br>**KENNETH PLATEK, in his official**<br>**capacity as Acting Director of the**<br>**National Vetting Center, in his official**<br>**capacity as well as his successors and**<br>**assigns, 22330 Glenn Dr, Sterling, VA**<br>**20164,**<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS' PETITION FOR WRIT OF MANDAMUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Narges Baba Ahmadi, Yasaman Zolfimoselo, Alipasha Montaseri, Atefeh Sadat Jamali Zadeh, Navid Dehban, Arya Jalali, Sina Elahi Manesh, and Mohammadali Mohammadkhani (collectively "Plaintiffs"), by and through the undersigned counsel, respectfully bring this Petition for Writ of Mandamus and Complaint for Declaratory and Injunctive Relief to compel Defendant

Marco Rubio ("Defendant Rubio"), Defendant Pamela Bondi ("Defendant Bondi"), and Defendant Kenneth Platek ("Defendant Platek") to adjudicate Plaintiffs' F-1 nonimmigrant visa applications.

## I.    INTRODUCTION

1.      Plaintiffs are 8 Iranian national students, who have been accepted into programs in American universities. All student Plaintiffs are in jeopardy of losing their admissions and fundings due to the Defendants' policies and unreasonable delay. This is an action to compel Defendants and those acting under them to immediately and forthwith take all appropriate action to adjudicate Plaintiffs' properly filed F-1 category nonimmigrant visa applications. The applications were all timely filed and remain within the jurisdiction of Defendants who have improperly withheld timely action on the applications, to the Plaintiffs' detriment.

2.      Plaintiffs all correctly and timely paid their DS-160 nonimmigration visa application fees of $185.

3.      Plaintiffs each properly submitted their DS-160 nonimmigration visa applications.

4.      Plaintiffs' visa interviews with the U.S. Consular Officer in Dubai, UAE, were scheduled for, and completed between April 22, 2024, to July 3, 2024.

5.      After Plaintiffs' F-1 visa interviews, they were asked for additional information. Plaintiffs submitted the requested information. *See* Exhibit A, 221(g) Responses. Since then, Plaintiffs' F-1 visa applications have been in suspended administrative processing under INA §221(g). *See* Exhibit B, Follow-up Communications and Responses to Plaintiffs' Inquiries.

6.      Plaintiffs have been awaiting the adjudication of their DS-160 nonimmigrant F-1 visa applications for between **ten (10) to twelve (12) months now**.[1] *See* Exhibit C, Visa

---

[1] Plaintiff Mohammadali Mohammadkhani has been in administrative processing for the relatively shortest time and has been unreasonably delayed since his interview on July 3, 2024. Plaintiff Navid Dehban has been waiting for the relatively longest time and has been unreasonably delayed since his interview on April 22, 2024.

Appointment Confirmation.

7. Despite completing their DS-160 nonimmigration F-1 visa interviews and providing all the necessary details about their address, travel and employment history, Plaintiffs have not received any substantive notification regarding their delayed DS-160 nonimmigration visa applications. *See* Exhibit B, Follow-up Communications and Responses to Plaintiffs' Inquiries.

8. Plaintiffs have fulfilled all necessary administrative requirements to obtain their non-immigrant visas ("NIV"). Still, Defendants have unreasonably delayed taking final action on the visa applications, leaving Plaintiffs in a perpetual state of administrative uncertainty.

9. Statutes, precedents, regulations, and agency guidance demonstrate that Defendants have a mandatory duty to adjudicate Plaintiffs' visa applications within a reasonable time – a duty which they have failed to fulfill.

10. The Administrative Procedure Act ("APA") requires that administrative agencies conclude matters represented to them "within a reasonable time." 5 U.S.C. §555(b).

11. Plaintiffs are entitled to a decision on the pending applications. The undue delay and improper withholding of statutorily mandated adjudication of pending NIV applications presents an ongoing violation of APA. 5 U.S.C. §555 *et seq*. and §701 *et seq*.

12. Plaintiffs hereby challenge the policies and procedures of the U.S. Department of State ("DOS") that result in the unreasonable delay and withholding of adjudication of their F-1 visa applications.

13. Plaintiffs now respectfully seek an order from this Court compelling the Defendants, and all those acting under their authority, to promptly complete the necessary background checks, take all appropriate steps to fulfill their mandatory, non-discretionary duty to

adjudicate Plaintiffs' F-1 Visa applications, and render decisions on those applications within twenty-one (21) days of the Court's Order.

14.    Plaintiffs are entitled to attorneys' fee and costs pursuant to the Equal Access to Justice Act ("EAJA"), 5 U.S.C. §504 and 28 U.S.C. §2412(d), *et seq*.

## II.    <u>JURISDICTION</u>

15.    Defendants' policies and procedures constitute final agency action and are reviewable by this Court under the APA. Defendants' policies, procedures, and practices have resulted in an unreasonable delay and unlawful withholding of Plaintiffs' F-1 nonimmigrant visa applications.

16.    This Honorable Court has subject matter jurisdiction over the claims alleged in this action under: (1) 28 U.S.C. §1331 (federal question jurisdiction), because Plaintiffs' claims arise under the laws of the U.S., including 5 U.S.C. §§555 and 701, *et seq*. ("APA"), 8 U.S.C. §1101 *et seq*. ("INA") (including 8 U.S.C. §1182).  This Court may grant relief in this action under 5 U.S.C. §§553, *et seq*. and §§701 *et seq*.; and 28 U.S.C. §§2201, *et seq*. (Declaratory Judgment Act).

17.    This Honorable Court is not deprived of jurisdiction by 8 U.S.C. §1252, INA §242. Generally, a narrower construction of jurisdiction-stripping provision is favored over the broader one, as reflected by the "familiar principle of statutory construction: the presumption favoring judicial review of administrative action." *Kucana v. Holder*, 558 U.S. 233, 251 (2010).  Absent "clear and convincing evidence" of congressional intent specifically to eliminate review of certain administrative actions, the above-cited principles of statutory construction support a narrow reading of the jurisdiction-stripping language of 8 U.S.C. §1252(a)(2)(B)(ii).  *Id.*, at 252.  *See also*, *Geneme v. Holder*, 935 F.Supp.2d 184, 192 (D.D.C. 2013) (discussing *Kucana's* citation to a

presumption favoring review of administrative action when statute does not specify discretion.)

18.    8 U.S.C. §1252(a)(5), INA §242(a)(5), provides that "a petition for review filed with an appropriate court of appeals in accordance with this section, shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act[.]"  As the present action is not an action to review a removal order but an action challenging an unreasonably long delay in the adjudication of DS-160 nonimmigrant F-1 visa applications, this Honorable Court retains original jurisdiction under the APA and 28 U.S.C. §1331, as well as for declaratory relief under 28 U.S.C. §2201.

### III.    VENUE

19.    Venue for a federal civil action against a federal officer or a federal agency is governed by 28 U.S.C. § 1391(e). Such actions may be brought in any judicial district in which: (A) a defendant in the action resides; (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (C) the plaintiff resides, if no real property is involved in the action. 28 U.S.C. § 1391(e)(1).

20.    Venue properly lies within the United States District of Colombia pursuant to 28 U.S.C. § 1391(e)(1)(C) because Plaintiffs reside in Iran, Germany, and Austria, and Defendants are officers and employees of the United States sued in their official capacities.

### IV.    PARTIES

#### A.  Plaintiffs

21.    Plaintiffs reside in Iran, Germany, and Austria. They are all applicants for, and are awaiting decisions on, their long-delayed DS-160 nonimmigrants F-1 visa applications. *See* Exhibit D, CEAC Online Case Statuses.

22.    Plaintiff Narges Baba Ahmadi ("Plaintiff Baba Ahmadi") is an Iranian national living in Germany. She has been accepted to pursue her PhD in Computer Science at the University

of Maryland in College Park. Her DS-160 application for an F-1 visa has been unreasonably delayed for **over ten months** since her interview on June 24, 2024. Plaintiff Baba Ahmadi's case number is **AA00CNAAX3**. *See* Exhibit E, Plaintiffs' Declaration.

23.     Plaintiff Yasaman Zolfimoselo (Plaintiff "Zolfimoselo") is an Iranian national currently living in Austria. She has been accepted to pursue her PhD in Computer Science at the University of Maryland in College Park. Her DS-160 application for an F-1 Visa has been unreasonably delayed for **over eleven months** since her interview on May 15, 2024. Plaintiff Zolfimoselo's case number is **AA00CBWOPF**. *Id.*

24.     Plaintiff Alipasha Montaseri (Plaintiff "Montaseri") is an Iranian national currently living in Austria. He has been accepted to pursue his PhD in Computer Science at the University of Maryland in College Park. His DS-160 application for a F-1 Visa has been unreasonably delayed for **over eleven months** since his interview on June 3, 2024. Plaintiff Montaseri's case number is **AA00CFHA39**. *Id.*

25.     Plaintiff Atefeh Sadat Jamali Zadeh (Plaintiff "Jamali Zadeh") is an Iranian national currently living in Iran. She has been accepted to pursue her PhD in Electrical and Electronics Engineering at the University of Illinois at Chicago (UIC). Her DS-160 application for an F-1 Visa has been unreasonably delayed for **over eleven months** since her interview on June 4, 2024. Plaintiff Jamali Zadeh's case number is **AA00CNWRC5**. *Id.*

26.     Plaintiff Navid Dehban (Plaintiff "Dehban") is an Iranian national currently living in Iran. He has been admitted to pursue his PhD program in Electrical and Electronics Engineering. His DS-160 application for an F-1 Visa has been unreasonably delayed for **over twelve months** since his interview on April 22, 2024. Plaintiff Dehban's case number is **AA00CB4UAP**. *Id.*

27.    Plaintiff Arya Jalali (Plaintiff "Jalali") is an Iranian national currently living in Iran. He has been accepted to pursue his PhD in Computer and Information Sciences at Yale University. His DS-160 application for an F-1 Visa has been unreasonably delayed for **over eleven months** since his interview on May 14, 2024. Plaintiff Jalali's case number is **AA00CG2ADR**. *Id.*

28.    Plaintiff Sina Elahi Manesh ("Plaintiff Elahi Manesh") is an Iranian national currently living in Iran. He has been accepted to pursue his PhD in Computer Engineering General at the University of Michigan in Ann Arbor. His DS-160 application for an F-1 Visa has been unreasonably delayed for **over ten months** since his interview on June 27, 2024.  Plaintiff Elahi Manesh's case number is **AA00DGNDPT**. *Id.*

29.    Plaintiff Mohammadali Mohammadkhani (Plaintiff "Mohammadkhani") is an Iranian national currently living in Iran. He has been accepted to pursue his PhD in Computer Science at Arizona State University. His DS-160 application for an F-1 Visa has been unreasonably delayed for **over ten months** since his interview on July 3, 2024.  Plaintiff Mohammadkhani's case number is **AA00CROC0H**. *Id.*

**B.  Defendants**

30.    Defendant Rubio is the Secretary of the Department of State, the department under which the U.S. embassies and consulates operate. He is responsible for the overall administration of the Department, including the Bureau of Consular Affairs, which is responsible for the issuance of nonimmigrant visas under the immigration laws of the United States. Under the Immigration and Nationality Act, he has the authority to issue regulations to implement the NIV program. 8 U.S.C. §§ 1153, 1154. As such, Defendant Rubio has supervisory responsibility for the U.S. consulates. Further, Defendant Rubio, as the Secretary of State, is on the National Vetting Governance Board, the senior interagency forum which provides guidance to the national vetting

enterprise and oversight and guidance to the National Vetting Center. Defendant Rubio is sued in his official capacity. The Department of State is headquartered at 2201 C Street, N.W., Washington, DC 20520.

31.    Pamela Bondi is the Attorney General of the United States, and this action is brought against her in her official capacity only, as well as her successors and assigns. Pursuant, inter alia, to 8 U.S.C. § 1103, she is charged with certain functions involved in the implementation of the INA (including the completion of federally required background checks) and is further authorized to delegate such powers and authority to subordinate employees of the FBI, which is an agency within the U.S. Department of Justice ("DOJ"). The DOJ is headquartered at 950 Pennsylvania Avenue, N.W., Washington, DC 20530.

32.    Defendant Kenneth Platek is the Acting Director of the National Vetting Center, within the U.S. Department of Homeland Security. The National Vetting Center handles security vetting for all non-immigrant cases. Most, if not all of administrative processing that is unreasonably delaying plaintiffs occurs under his jurisdiction. Defendant Platek is sued in his official capacity. DHS is headquartered at 245 Murray Lane, S.W., Washington, DC 20598.

## LEGAL FRAMEWORK AND FACTUAL ALLEGATIONS

### F-1 Student Visa Program

33.    According to the State Department's Foreign Affairs Manual ("FAM"), "[a]n F or M visa is usually required for individuals to enter the United States to attend university or college, public or private secondary school, private elementary school, seminary, conservatory, other academic institution, including a language training program, or vocational or other recognized nonacademic institution." 9 FAM 402.5-5(B).[2]

_____

[2] The Foreign Affairs Manual ("FAM") and associated Handbooks ("FAHs") are internal sources for the DOS's

34.     Congress provides that F visas and status can be granted to a nonimmigrant "who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study [….] at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in a language training program in the United States, […] and (ii) the [noncitizen] spouse and minor children of any such [noncitizen] if accompanying [him] or following to join [him]." 8 U.S.C. §1101(a)(15)(F). The Immigration and Nationality Act ("INA") also requires that "an F-1 or M-1 applicant possess a residence in a foreign country they have no intention of abandoning." 9 FAM 402.5-5(E).

35.     To obtain an F-1 visa, the applicant needs to meet the following requirements: "(1) acceptance at a school as evidenced by a Form I-20 […]; (2) Intent to enter the United States solely to pursue a full course of study at an approved institution; (3) Present intent to leave the United States at conclusion of approved activities […]; (4) Possession of sufficient funds to meet the individual's financial needs […]; and (5) Preparation for course of study […]" 9 FAM 402.5-5(C)(a).

36.     The first requirement for an F-1 visa is "Form I-20, Certificate of Eligibility for Nonimmigrant Student Status, issued by a Student and Exchange Visitor Program ("SEVP")-certified school to be issued an F-1 or M-1 student visa. Only an SEVP-certified school can issue a Form I-20 to students who have been accepted for enrollment." 9 FAM 402.5-5(D)(a). SEVP is a Department of Homeland Security ("DHS") Immigration and Customs Enforcement ("ICE") program administrative with the Student and Exchange Visitor Identification System ("SEVIS")

---

organization structures, policies, and procedures that govern the operations of the State Department. The FAM (generally policy) and the FAHs (generally procedures) together convey internal policies to DOS staff and contractors so they can carry out their responsibilities. Department policy is enforceable pursuant to the. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

"that monitors schools and programs, students, exchange visitors, and their dependents throughout the duration of approved participation within the U.S. education system." 9 FAM 402.5-4(A)(b). A prospective foreign student gets their I-20 after being accepted into the educational programs; after which, the student needs to pay the appropriate I-901 SEVIS fee ($350 for F or M visa applicant) before starting to apply for the visa.

37.    The second requirement for an F-1 visa is that the applicant intends to pursue a "full course of study" at an approved institution. DHS provides that "[s]uccessful completion of the full course of study must lead to the attainment of a specific educational or professional objective." 8 C.F.R. §214.2(f)(6)(i). In particular, a full course of study is deferred to the requirements set by the Designated School Official (DSO) for postgraduate study at college or university. *Id*. at §214.2(f)(6)(i)(A).

38.    The fourth and fifth requirements are noted in the I-20 issued by the educational institution and/or in the SEVIS record. The third requirement refers to the applicant's burden to establish the nonimmigration intent.

**Defendants' Mandatory Duty to Adjudicate Visa Applications**

39.    Defendants have a mandatory duty to adjudicate Plaintiffs' visa applications within a reasonable time. *Kinsley v. Blinken*, Civil Action No. 21-962 (JEB), 2021 U.S. Dist. LEXIS 191526, at *25 (D.D.C. Oct. 5, 2021) ("the Department cannot rely on § 1182(f) to maintain a policy of not adjudicating nonimmigrant visas from Proclamation countries."); *Mohamed v. Pompeo*, U.S. Dist. LEXIS 167266, at *11-12 (E.D. Cal. Sep. 27, 2019) (issuing a mandatory injunction ordering the DOS to complete adjudications of visa application); 5 U.S.C § 555(b) (requiring agencies to, "within a reasonable time […] conclude the matter presented to it"); *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*

("*Nine Iraqi Allies*"), 168 F. Supp. 3d 268, 293 n. 22, 295–96 (D.D.C. 2016).

40.    The INA, its implementing regulations, and preexisting Department policies in the FAM mandate timely adjudication of nonimmigrant visa applications.

41.    The INA authorizes consular officers to issue nonimmigrant visas to foreign nationals who are eligible for those visas and who are admissible to the United States under relevant nonimmigration classifications. *See* 8 U.S.C. § 1201; 22 C.F.R. §§ 41.111-41.113; 9 FAM 403.

42.    "When a visa application has been properly completed and executed in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa […]." 22 C.F.R. § 41.121(a); 9 FAM 403.10-2.

43.    "For an NIV applicant, 'making a visa application' requires the applicant to complete three components: (1) Submit for formal adjudication by a consular officer a completed Form DS-160, signed electronically […]; (2) Pay the required application fee […]; and (3) Provide any required biometric data." 9 FAM 403.2-3.

44.    "Once an application has been made, [the consular officer] must either issue the visa or refuse it. [The consular officer] cannot temporarily refuse, suspend, or hold the visa for future action. If [the consular officer] refuse[s] the visa, [the consular officer] must inform the applicant of the provisions of the law on which the refusal is based, and of any statutory provision under which administrative relief is available." 9 FAM 403.7-3.

45.    "If an applicant fails to meet one or more of the above criteria, the appropriate ground of refusal is INA 214(b)." 9 FAM 402.5-5(C)(b).

46.    "The Department's regulations provide that "[w]hen a visa application has been properly completed and executed in accordance with the provisions of the INA and the

implementing regulations, the *consular officer* must issue the visa [or] refuse the visa[.]" 22 C.F.R. § 41.121(a) (emphasis added). However, the FAM provides that, in cases in which an Advisory Opinion has been requested, "[u]nder no circumstances may a resolution of the question of eligibility be made before the Department's [Advisory Opinion] is received." 9 FAM 403.10-3(B). There is a conflict between the Department's regulations and this provision of the FAM, because the regulations require that the consular officer make the determination as to an applicant's eligibility, whereas the FAM forbids the consular officer from doing so in certain cases before the Department's Advisory Opinion is received. 22 C.F.R. § 41.121(a); 9 FAM 403.10-3(B). Thus, the FAM essentially places resolution of the question of eligibility out of the consular officer's hands, in contravention of 22 C.F.R. § 41.121(a). This conflict is evidence of improper withholding of the adjudication of visa applications, which violates the strictures of 5 U.S.C. § 706(2).

47.    If a visa is refused, the application must be reconsidered if "within one year from the date of refusal [the applicant] adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based." 22 C.F.R. § 42.81(e).

48.    The FAM section entitled "If an Advisory Opinion (AO) is Required," has a subsection called "Procedures in cases requiring an AO." 9 FAM § 504.11-3(A)(6). It states, "The consular section must use a tickler system as a reminder to send a follow-up request for [an Advisory Opinion request] response after a reasonable period has elapsed." 9 FAM 504.11-3(a)(6)(a).

49.    Plaintiffs all (1) submitted completed and signed Form DS-160/ DS-2019s, (2) paid the required application fees, and (3) provided all required data and information while interviewed by the consular officer(s) at their respective embassies.

50.    Despite submitting all required fees and documents and being interviewed, the

Plaintiffs have yet to receive final adjudication of their visa applications.

## STATEMENT OF FACTS

**NARGES BABA AHMADI**

51.    Plaintiff Baba Ahmadi is a national of Iran living in Germany. She has been admitted to pursue her PhD in Computer Science at the University of Maryland in College Park.

52.    Plaintiff Baba Ahmadi was assigned the case number **AA00CNAAX3**.

53.    Plaintiff Baba Ahmadi was interviewed on June 24, 2024, at the U.S. Embassy in Dubai, UAE. After the interview, Plaintiff Baba Ahmadi was informed that she would need further administrative processing despite there being no issues with her case. Since then, the embassy has offered no substantial updates on the status of the case. *See* Exhibit D, CEAC Online Case Statuses.

54.    On June 24, 2024, Plaintiff Baba Ahmadi was requested by the U.S. Embassy to provide responses to a series of questions via email. She timely complied and submitted the requested information on June 28, 2024, including several years of detailed personal history such as residential addresses, employment history, and travel record. On July 2, 2024, she received an email from the U.S. Embassy confirming receipt of her responses and supporting documents and notifying her that administrative processing had commenced.

55.    Plaintiff Baba Ahmadi sent several inquiries to the embassy, seeking updates or an understanding of her situation. She was only given an unhelpful and template response that her F-1 DS-160 visa application remains under administrative processing, with no estimated timeline for adjudication. *See* Exhibit B, Follow-up Communications and Responses to Plaintiffs' Inquiries.

56.    Defendants' unreasonable delay has caused severe and particular harm to Plaintiff Baba Ahmadi who faces the real and immediate risk of losing her admission and scholarship.

57.    Defendants' policies delay Plaintiff Baba Ahmadi's academic and professional

progress. Plaintiff Baba Ahmadi was initially expected to begin her PhD studies in the Fall of 2024, but she has had to defer her admission multiple times due to the defendants' delay. She has lost time and access to academic collaborations.

58.    Defendants' policy, action, and inaction caused financial and academic harm to Plaintiff Baba Ahmadi. She is suffering from emotional and mental distress due to prolonged uncertainty surrounding her visa processing.

## YASAMAN ZOLFIMOSELO

59.    Plaintiff Zolfimoselo is a national of Iran living in Austria. She has been admitted to pursue her PhD in Computer Science at the University of Maryland in College Park.

60.    Plaintiff Zolfimoselo was assigned the case number **AA00CBWOPF**.

61.    Plaintiff Zolfimoselo was interviewed on May 15, 2024, at the U.S. Embassy in Dubai, UAE. After the interview, Plaintiff Zolfimoselo was informed that she would need further administrative processing despite there being no issues with her case. Since then, the embassy has offered no substantial updates on the status of the case. *See* Exhibit D, CEAC Online Case Statuses.

62.    On the same day as her interview, Plaintiff Zolfimoselo was asked by the U.S. Embassy to respond to a series of specific questions regarding her background and to submit additional documents. She timely complied on May 19, 2024, providing several years of detailed personal history, including residential addresses, employment history, and travel records. On May 24, 2024, she received an email from the U.S. Embassy confirming receipt of her responses and documents and notifying her that administrative processing had commenced.

63.    Plaintiff Zolfimoselo sent several inquiries to the embassy to seek further information on the status of her case, only to be ignored or given template and unhelpful responses each time. *See* Exhibit B, Follow-up Communications and Responses to Plaintiffs' Inquiries.

64.    Defendants' unreasonable delay has caused severe and particular harm to Plaintiff

Zolfimoselo who faces the real and immediate risk of losing her admittance and scholarship.

65.    Defendants' policies delayed Plaintiff Zolfimoselo's academic and professional progress. Plaintiff Zolfimoselo was initially expected to begin her PhD program on August 19, 2024, but she has had to defer her start date multiple times.

66.    Defendants' policy, action, and inaction caused financial and professional harm to Plaintiff Zolfimoselo. She is suffering from emotional and mental distress due to prolonged uncertainty surrounding his visa processing.

**ALIPASHA MONTASERI**

67.    Plaintiff Montaseri is a national of Iran living in Austria. He has been admitted to pursue his PhD in Computer Science at the University of Maryland.

68.    Plaintiff Montaseri's case number is **AA00CFHA39**.

69.    Plaintiff Montaseri was interviewed on June 3, 2024, at the U.S. Embassy in Dubai, UAE.

70.    After the interview, Plaintiff Montaseri was informed that he would need further administrative processing despite there being no issues with his case. Since then, the embassy has offered no substantial updates on the status of the case. *See* Exhibit D, CEAC Online Case Statuses.

71.    On June 3, 2024, Plaintiff Montaseri received an email from the U.S. Embassy requesting responses to specific questions regarding his background and additional supporting documents. He submitted the requested information and documents on June 6, 2024. That same day, he received confirmation from the U.S. Embassy that his responses and documents had been received, and that administrative processing had commenced.

72.    Plaintiff Montaseri submitted several inquiries to the U.S. Embassy seeking information about the status of his visa application. In response, he received a single generic email

stating that his case remains under administrative processing, without providing any meaningful details or estimated timeline for adjudication.

73.     Plaintiff Montaseri's PhD program was originally scheduled to begin on August 19, 2024. However, he has had to defer his admission multiple times due to the defendants' unreasonable delay.

74.     Defendants' unreasonable delay has caused severe and particular harm to Plaintiff Montaseri who faces the real and immediate risk of losing his admittance and scholarship.

75.     Defendants' policy, action, and inaction caused financial and professional harm to Plaintiff Montaseri. The unreasonable delay in adjudicating his F-1 Visa application has caused Plaintiff Montaseri to continue suffering from anxiety due to the ongoing uncertainty.

**ATEFEH SADAT JAMALI ZADEH**

76.     Plaintiff Jamali Zadeh is a national of Iran living in Iran. She has been admitted to (UIC) to pursue her PhD in Electrical and Electronics Engineering.

77.     Plaintiff Jamali Zadeh's case number is **AA00CNWRC5**.

78.     Plaintiff Jamali Zadeh was interviewed on June 4, 2024, at the U.S. Embassy in Dubai, UAE.

79.     After the interview, Plaintiff Jamali Zadeh was informed that she would need further administrative processing despite there being no issues with her case. Since then, the embassy has offered no substantial updates on the status of the case. *See* Exhibit D, CEAC Online Case Statuses.

80.     On June 5, 2024, Plaintiff Jamali Zadeh received an email from the U.S. Embassy in Dubai requesting specific questions about her background and additional documents. She submitted the requested information and documents on June 10, 2024. On the same day, Plaintiff

Jamali Zadeh received confirmation from the U.S. Embassy that her responses and documents had been received, and that administrative processing had commenced.

81.    Plaintiff Jamali Zadeh's PhD program in Electrical and Electronics Engineering was scheduled to begin on August 26, 2024; however, due to the ongoing visa delay, she was unable to participate. As a result, she had to defer her admission to Spring 2025. Unfortunately, the continued delays prevented her from enrolling that semester, leading to the loss of her admission. After explaining her circumstances to her advisor at the University of Illinois at Chicago, he generously supported her case and successfully arranged for her admission to be reinstated for Fall 2025.

82.    Defendants' unreasonable delay has caused severe and particular harm to Plaintiff Jamali Zadeh, who faces the real and immediate risk of losing her admission again.

83.    Plaintiff Jamali Zadeh is suffering from significant anxiety due to indefinite administrative uncertainty.

84.    Defendants' policy, action, and inaction have also caused financial and academic harm to Plaintiff Jamali Zadeh. She is suffering from emotional and mental distress due to prolonged uncertainty surrounding her visa processing.

**NAVID DEHBAN**

85.    Plaintiff Dehban is a national of Iran residing in Iran. He has been accepted to pursue a PhD program in Electrical and Electronics Engineering at the University of Maryland, College Park.

86.    Plaintiff Dehban's case number is **AA00CB4UAP**.

87.    Plaintiff Dehban was interviewed on April 22, 2024, at the U.S. Embassy Dubai, UAE.

88.    After the interview, Plaintiff Dehban was informed that he would need further administrative processing despite there being no issues with his case. Since then, the embassy has offered no substantial updates on the status of the case. *See* Exhibit D, CEAC Online Case Statuses.

89.    During his visa interview, Plaintiff Dehban was refused under Section 221(g), provided with a form, and informed that he would receive follow-up questions via email. However, he never received any such questions. Plaintiff Dehban inquired on May 6, 2024, and on May 14, the U.S. Embassy responded, stating that his case had been cleared and instructed him to submit his passport for visa issuance, which he promptly did. However, on June 5, 2024, Plaintiff Dehban received another email indicating that he was once again refused under Section 221(g), this time with clearance questions and a new form. He submitted the requested documents on the same day, and on June 6, the embassy confirmed receipt and informed him that administrative processing had begun.

90.    Plaintiff Dehban sent several inquiries to the embassy to seek further information on the status of his case, but he did not receive any response. *See* Exhibit B, Follow-up Communications and Responses to Plaintiffs' Inquiries.

91.    Plaintiff Dehban was scheduled to begin his PhD program in Fall 2025; however, due to the Defendants' unreasonable delay, he was unable to do so and had to defer multiple times.

92.    Defendants' unreasonable delay has caused severe and particular harm to Plaintiff Dehban who faces the real and immediate risk of losing his admission and scholarship.

93.    Defendants' policies, actions, and inactions have caused both financial and academic harm to Plaintiff Dehban. The University of Maryland has informed him that no further deferrals will be granted. He has already lost over $1,500 in campus housing fees because he was misinformed by the U.S. Embassy that his visa was ready for issuance, only to later be placed in administrative processing. This delay has also caused emotional and physical harm, as Plaintiff

Dehban is suffering from anxiety and exhibiting symptoms of depression.

**ARYA JALALI**

94.     Plaintiff Jalali is a national of Iran living in Iran. He has been admitted to Yale University in New Haven, Connecticut, to pursue his PhD in Computer and Information Sciences.

95.     Plaintiff Jalali's case number is **AA00CG2ADR**.

96.     Plaintiff Jalali was interviewed on May 14, 2024, at the U.S. Embassy in Dubai, UAE.

97.     After the interview, Plaintiff Jalali was informed that he would need further administrative processing despite there being no issues with his case. Since then, the embassy has offered no substantial updates on the status of the case. *See* Exhibit D, CEAC Online Case Statuses.

98.     On May 14, 2024, Plaintiff Jalali received an email from the U.S. Embassy in Dubai requesting specific information about his background and additional documents. On May 17, 2024, he submitted the requested information and documents. On May 22, 2024, Plaintiff Jalali received a follow-up email from the Embassy requesting additional information, which he provided the same day. On May 23, 2024, Plaintiff Jalali received confirmation from the U.S. Embassy that his responses and documents had been received, and that administrative processing had commenced.

99.     Plaintiff Jalali was originally set to begin his PhD program in the Fall of 2024 but has had to defer his start date multiple times due to the Defendants' unreasonable delay.

100.    Defendants' unreasonable delay has caused severe and particular harm to Plaintiff Jalali who faces the real and immediate risk of losing his admittance and scholarship.

101.    Defendants' policy, action, and inaction caused financial and academic harm to Plaintiff Jalali. The unreasonable delay in adjudicating his F-1 visa application has caused Plaintiff Jalali to continue suffering from anxiety due to the ongoing uncertainty.

**SINA ELAHI MANESH**

102.    Plaintiff Elahi Manesh is a national of Iran living in Iran. He has been admitted to the University of Michigan in Ann Arbor to pursue his PhD in Computer Engineering General.

103.    Plaintiff Elahi Manesh's case number is **AA00DGNDPT.**

104.    Plaintiff Elahi Manesh was interviewed on June 27, 2024, at the U.S. Embassy in Dubai, UAE.

105.    After the interview, Plaintiff Elahi Manesh was informed that he would need further administrative processing despite there being no issues with his case. Since then, the embassy has offered no substantial updates on the status of the case. *See* Exhibit D, CEAC Online Case Statuses.

106.    On June 27, 2024, Plaintiff Elahi Manesh received an email from the U.S. Embassy in Dubai requesting specific information about his background and additional documents. On July 6, 2024, he submitted the requested information and documents. On July 8, 2024, Plaintiff Elahi Manesh received an email from the U.S. Embassy confirming that his responses and documents had been received and that administrative processing had commenced.

107.    Plaintiff Elahi Manesh submitted a senatorial inquiry through the office of Senator Debbie Stabenow of Michigan to the U.S. Embassy in Dubai, requesting an update on the status of his F-1 visa application. In response, he received only generic and uninformative reply stating that his case remains in administrative processing. *See* Exhibit B, Follow-up Communications and Responses to Plaintiffs' Inquiries.

108.    Plaintiff Elahi Manesh's PhD program had an initial start date set for the Fall of 2024. However, he has had to defer the start date multiple times due to the defendants' unreasonable delay.

109.    Defendants' unreasonable delay has caused severe and particular harm to Plaintiff Elahi Manesh who faces the real and immediate risk of losing his admission and scholarship.

110.    Plaintiff Elahi Manesh is increasingly anxious due to his indefinite state of administrative limbo. His professor has expressed frustration and is quickly losing patience with this unreasonably long delay.

111.    Defendants' policy, action, and inaction caused financial and academic harm to Plaintiff Elahi Manesh. He is suffering from emotional and mental distress due to prolonged uncertainty surrounding his visa processing.

**MOHAMMADALI MOHAMMADKHANI**

112.    Plaintiff Mohammadkhani is a national of Iran living in Iran. He has been admitted to Arizona State University where he will be pursuing his PhD program in Computer Science.

113.    Plaintiff Mohammadkhani's case number is **AA00CROC0H**.

114.    Plaintiff Mohammadkhani was interviewed on July 3, 2024, at the U.S. Embassy in Dubai, UAE.

115.    After the interview, Plaintiff Mohammadkhani was informed that he would need further administrative processing despite there being no issues with his case. Since then, the embassy has offered no substantial updates on the status of the case. *See* Exhibit D, CEAC Online Case Statuses.

116.    On July 3, 2024, Plaintiff Mohammadkhani received an email from the U.S. Embassy in Dubai requesting specific information about his background and additional documents. He submitted the requested information and documents on July 10, 2024. That same day, Plaintiff Mohammadkhani received confirmation from the U.S. Embassy that his responses and documents had been received, and that administrative processing had commenced.

117.    Plaintiff Mohammadkhani's PhD program in Computer Science was scheduled to begin on August 22, 2024; however, due to the ongoing visa delay, he was unable to participate. As a result, he deferred his admission to Spring 2025. Since a second deferral was not permitted, he was required to reapply and was subsequently readmitted for Fall 2025.

118.    Defendants' unreasonable delay has caused severe and particular harm to Plaintiff Mohammadkhani who faces the real and immediate risk of losing his admission and scholarship.

119.    Defendants' policy, action, and inaction caused financial and academic harm to Plaintiff Mohammadkhani. He is suffering from emotional and mental distress due to prolonged uncertainty surrounding his visa processing.

## ARGUMENTS

**A. Defendants' Unreasonable Delay in Processing the Applications Harms Plaintiffs**

120.    The delay in the final adjudication of Plaintiffs' NIV applications has placed severe emotional and financial strain on Plaintiffs and their U.S. universities.

121.    The delay has placed a severe financial and emotional burden on Plaintiffs as they are facing this uncertainty. They are constantly wondering whether they would receive the visa and come to the U.S. to continue their education and research. This administrative uncertainty brought financial uncertainty as they could not plan for the future.

122.    Plaintiffs face irreparable injury that cannot later be cured. Due to the delay in processing the visas, they are indefinitely stranded abroad and unable to continue their education and research in the United States.

123.    This delay is further severely affecting their professional progression as Plaintiffs cannot come to the U.S. to work with their peers and receive mentorship from their supervisors. Every day the visa application is unreasonably delayed, Plaintiffs are missing out on the

mentorship, promotion opportunities, scholarships, and benefits afforded by the educational programs.

124.     Moreover, due to this unreasonable delay, Plaintiffs now face the imminent prospect of being terminated altogether. Plaintiffs are experiencing significant financial, professional, and emotional harm.

125.     Additionally, Plaintiffs are feeling helpless and frustrated as they have been given no timeline or indication as to when they will receive their visas. As a result, Plaintiffs are suffering from severe emotional and psychological distress at the uncertainty of when or if they will be allowed to come to the United States.

126.     Plaintiffs suffer trauma, depression, and anxiety caused by this unreasonable delay. These stresses often manifest in "failure to thrive" symptoms – where individuals succumb to losing their will to live.[3]

127.     The universities are also suffering from this unreasonable delay because Plaintiffs as PhD students often perform duties such as research assistants or graduate assistants for their supervisor or the department. The national interests of the United States also suffer from this undue delay, as it prevents access to these individuals' talents and the results of their research.

## B. Defendants have Failed to Fulfill their Statutory and Mandatory Duties to the Plaintiffs

128.     Defendants must adjudicate nonimmigrant visa applications that are properly filed. This is supported by statutes, precedents, agency regulations, and guidelines.

---

[3] *See Gabrielle Bruney, A Yemeni-American Man Died By Suicide After Trump's Travel Ban Separated Him From His Family* (July 29, 2018) https://www.esquire.com/news-politics/a22584044/yemeni-american-suicide-trumps-travel-ban/, (Describing how Mahmood Salem called his Yemeni wife and children in Djibouti and telling them he was going to kill himself, because even after borrowing from his family, he could not make ends meet. The stress, despair, and anxiety caused by the unreasonable delay in the adjudication of his wife's visa application had become too much to handle. Mahmood, who had no reported mental health issues, was found by his brother dead by a self-inflicted gunshot wound to the head.)

129.    "The application for a nonimmigrant visa or other documentation as a nonimmigrant *shall* be disposed of as may be by regulations prescribed." 8 U.S.C. § 1202(e) (emphasis added).

130.    The Department's regulations also provide that "[w]hen a visa application has been properly completed and executed in accordance with the provisions of the INA and the implementing regulations, the consular officer *must* issue the visa, refuse the visa […]." 22 C.F.R. § 41.121(a) (emphasis added).

131.    The Department's FAM also echoes the statute and regulations. "Once an application has been executed, you *must* either issue the visa or refuse it. You cannot temporarily refuse, suspend, or hold the visa for future action. If you refuse the visa, you must inform the applicant of the provisions of the law on which the refusal is based, and of any statutory provision under which administrative relief is available." 9 FAM 403.7-3 (emphasis added). *See* 9 FAM 403.10-2(A) ("A nonimmigrant visa (NIV) must be issued or refused in all cases once an application has been made.")

132.    Federal courts have recognized that the Department has a statutory duty to process nonimmigration visa applications. "The wide latitude given the Executive to grant or deny a visa application--a discretion bounded only by the U.S. Constitution and Congressional mandate--does not include the authority to refuse to adjudicate a visa application." *Am. Acad. of Religion v. Chertoff*, 463 F. Supp. 2d 400, 403, 2006 U.S. Dist. LEXIS 42601, *1, 42 A.L.R. Fed. 2d 607. In *Am. Acad.*, the court ordered the Department to process a delay B visa within 90 days of the order. *Id*. at 423. *See also Patel v. Reno*, 134 F.3d 929, 932, 1997 U.S. App. LEXIS 38282, *7, 98 Cal ("A consular office is required by law to act on visa application").

133.    Plaintiffs therefore have "point[ed] to a precise section of the INA," *Meina Xie v.*

25

*Kerry*, 414 U.S. App. D.C. 287, 290, 780 F.3d 405, 408 (2015), that imposes "a mandatory duty,"
*see Anglers Conservation Network v. Pritzker*, 420 U.S. App. D.C. 418, 425, 809 F.3d 664, 671
(2016).

134.     Pursuant to the APA, Defendants have a nondiscretionary duty "to conclude a
matter presented to it" "within a reasonable time." 5 U.S.C. § 555(b). Separately and in
combination, the INA and the APA required Defendants to make good-faith efforts to process as
many nonimmigrant visas as practicable. *See Gomez v. Trump* ("*Gomez I*"), 485 F. Supp. 3d 145,
196, 198 n.23 (D.D.C. 2020) ("[R]easonable time for agency action is typically counted in weeks
or months, not years.")

135.     Defendants' blatant disregard for the time-sensitive nature of the visa application
shows that Defendants act with impropriety in creating "agency lassitude." *Telecomms. Research*
*& Action Ctr. v. F.C.C.* ("TRAC"), 750 F.2d 70, 80 (D.C. Cir. 1984).

136.     Pursuant to the APA, a court may compel agency action "unlawfully withheld or
unreasonably delayed." 5 U.S.C. § 706(1). Defendants have Unlawfully Withheld Plaintiffs' Visa
Adjudications.

137.     The Department is an agency subject to the requirements of the APA, 5 U.S.C. §
701(b)(1). 5 U.S.C. § 706(1) allows courts to "compel agency action unlawfully withheld." *See*
*Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004).

138.     Plaintiffs proceeding under 706(1) need only assert "that an agency failed to take a
discrete agency action that it is required to take." *Norton*, 524 U.S. at 64. Defendants have statutory
and mandatory duties to process the nonimmigrant visas. *See* 8 U.S.C. § 1202(e); 22 C.F.R. §
41.121(a); 9 FAM 403.7-3, 403.10-2(A); *Am. Acad.*, 463 F. Supp. 2d at 421; *see also Patel*, 134
F.3d at 932. Under 5 U.S.C. § 706(2), courts shall "hold unlawful and set aside agency action that

is arbitrary, capricious, an abuse of discretion, […] or otherwise not in accordance with law or without observance of procedure required by law." Defendants' unreasonable delay constitutes a final agency action by withholding and delaying the adjudication and issuance of Plaintiffs' visa applications. *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001); *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

139.    Defendants' inaction, in this case, is capable of redress. *Moghaddam v. Pompeo*, 424 F. Supp. 3d 103, 114 (D.D.C. 2020) (quoting *Patel*, 134 F.3d at 931-32); *see also Nine Iraqi Allies*, 168 F. Supp. 3d at 290-91 ("When the Government simply declines to provide a decision in the manner provided by Congress, it is not exercising its prerogative to grant or deny applications but failing to act at all.")

140.    Plaintiffs will continue to be irreparably harmed by these unlawful acts absent an injunction from this Court enjoining Defendants from withholding adjudication of Plaintiffs' visas. 5 U.S.C. § 706(1).

## C. Defendants' Purported Capacity Restrictions do not Relieve them of their Duties and are Further Refuted by the Evidence

141.    Defendants may claim that their capacity has been significantly reduced and are therefore unable to adjudicate Plaintiffs' visa applications in a reasonable time. However, backlogs and lack of resources do not relieve Defendants of their duty to adjudicate Plaintiffs' application within a reasonable time.

142.    "Defendants are at the very least required to proffer an explanation for the delay beyond merely referring to backlogs and lack of resources generally." *Ghashghai v. Mukasey*, No. 07CV0163-LAB (RBB), 2008 U.S. Dist. LEXIS 20128, at *10 (S.D. Cal. Mar. 13, 2008); citing *Ali v. Mukasey*, 2008 U.S. Dist. LEXIS 18171, 2008 WL 538974, slip op. at *4 (W.D.Wash., Mar. 7, 2008).

143. A policy crisis cannot excuse Defendants from their statutory duty to the Plaintiffs. *Yong Tang v. Chertoff*, 493 F. Supp. 2d 148, 158 (D. Mass. 2007).

144. Plaintiffs are aware of many other visa applicants who attended an interview after the Plaintiffs and went into administrative processing have since received final decisions on their applications, suggesting that the State Department is prioritizing other applicants' applications over the Plaintiffs.

## CLAIMS FOR RELIEF

### Count I

### (Violation of the APA, 5 U.S.C. § 706(1) Withholding Adjudications of Plaintiffs' Visa Applications)

145. Plaintiffs incorporate and re-allege the foregoing paragraphs as though fully set forth herein.

146. The Department is an agency subject to the requirements of the APA, 5 U.S.C. § 701(b)(1). 2421. Pursuant to the APA, 5 U.S.C. §§706(1), 706(2)(A), 706(2)(D), a reviewing court may also "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law" and agency action taken "without observance of procedure required by law"; "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. 706(C); or "without observance of procedure required by law," 5 U.S.C. § 706(D). "Agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent thereof, or failure to act." 5 U.S.C. § 551(13).

147. Defendants' withholding and delaying the adjudication and issuance of Plaintiffs' visa applications constitutes a final agency action that is reviewable by this Court. *Whitman*, 531 U.S. at 478; *Bennett*, 520 U.S. at 177-78.

148.    The Department's regulations provide that "[w]hen a visa application has been properly completed and executed in accordance with the provisions of the INA and the implementing regulations, the *consular officer* must issue the visa [or] refuse the visa[.]" 22 C.F.R. § 41.121(a) (emphasis added). However, the FAM provides that, in cases in which an Advisory Opinion has been requested, "[u]nder no circumstances may a resolution of the question of eligibility be made before the Department's [Advisory Opinion] is received." 9 FAM 403.10-3(B). There is a conflict between the Department's regulations and this provision of the FAM, because the regulations require that the consular officer make the determination as to an applicant's eligibility, whereas the FAM forbids the consular officer from doing so in certain cases before the Department's Advisory Opinion is received. 22 C.F.R. § 41.121(a); 9 FAM 403.10-3(B). Thus, the FAM essentially places resolution of the question of eligibility out of the consular officer's hands, in contravention of 22 C.F.R. § 41.121(a). This conflict is evidence of improper withholding of the adjudication of visa applications, which violates the strictures of 5 U.S.C. § 706(2).

149.    "Regulations with the force and effect of law supplement the bare bones" of federal statutes, and even in areas of expansive discretion, agencies must follow their own "existing valid regulations." *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265, 268 (1954).

150.    "*Accardi* has come to stand for the proposition that agencies may not violate their own rules and regulations to the prejudice of others." *Battle v. FAA*, 393 F.3d 1330, 1336 (D.C. Cir. 2005); *see also Montilla v. INS*, 926 F.2d 162, (2nd Cir. 1991) ("The *Accardi* doctrine is premised on fundamental notions of fair play underlying the concept of due process…[i]ts ambit is not limited to rules attaining the status of formal regulations.")

151.    Pursuant to the *Accardi* Doctrine, Defendants must discharge the nondiscretionary duty and fulfill the will of Congress by properly and fully adjudicating Plaintiffs' visa application.

*Razi v. Pompeo*, No. 20-CV-0982-W-MSB, 2020 U.S. Dist. LEXIS 197679, at *12 (S.D. Cal.

Oct. 23, 2020) ("*Accardi v. Shaughnessy*, which held that administrative agencies are bound to

follow their own rules and regulations (the '*Accardi* doctrine'). 347 U.S. 260, 268, 74 S. Ct. 499,

98 L. Ed. 681 (1954). *See also Church of Scientology of Cal. v. United States*, 920 F.2d 1481, 1487

(9th Cir. 1990) ('Pursuant to the *Accardi* doctrine, an administrative agency is required to adhere

to its own internal operating procedures.'); *Alcaraz v. INS*, 384 F.3d 1150, 1162 (9th Cir. 2004)

('[C]ourts have recognized that the so-called *Accardi* doctrine extends beyond formal

regulations.'). Under the *Accardi* doctrine, an individual can sue an agency for failure to follow

the agency's own rules and procedures. *Accardi*, 347 U.S. at 268.")

152.    Defendants' suspending the adjudication of F and J nonimmigrant visas for the

Plaintiffs is arbitrary and capricious, an abuse of discretion, and not in accordance with law

because Defendants lack the statutory authority to unilaterally withhold and delay the

adjudications of F and J nonimmigrant visas for Plaintiffs.

153.    Furthermore, Defendants' written policies and rules make plain that processing of

student visas is a high priority. 9 FAM 402.5-5(H)(2) ("Faced with growing international

competition for international students, *promoting U.S. colleges and universities is a priority for

the Department to ensure that the United States continues to be the top receiver of international

students globally*.") (emphasis added).

154.    Defendants' inaction, in this case, creates jurisdiction. *Moghaddam*, 424 F. Supp.

3d at 114 (quoting *Patel*, 134 F.3d at 931-32); *see also Nine Iraqi Allies*, 168 F. Supp. 3d at 290-

91 ("When the Government simply declines to provide a decision in the manner provided by

Congress, it is not exercising its prerogative to grant or deny applications but failing to act at all.")

155.    Plaintiffs have been harmed and will continue to be irreparably harmed by these

unlawful acts absent an injunction from this Court enjoining Defendants from withholding adjudication of Plaintiffs' visa applications.

## COUNT II

### (Violation of the APA, 5 U.S.C. § 555(b) Unreasonably Delayed Adjudications of Visa Applications)

156.    Plaintiffs incorporate and re-allege the foregoing paragraphs as though fully set forth herein.

157.    Pursuant to the APA, Defendants have a nondiscretionary duty "to conclude a matter presented to it" "within a reasonable time." 5 U.S.C. § 555(b).

158.    Defendants have statutory and mandatory duties to process F nonimmigrant visas. *See* 8 U.S.C. § 1202(e); 22 C.F.R. § 41.121(a); 9 FAM 403.7-3, 403.10-2(A); *Am. Acad.*, 463 F. Supp. 2d at 421; *see also Patel*, 134 F.3d at 932.

159.    Defendants have unreasonably delayed processing Plaintiffs' visa application under *TRAC*, 750 F.2d at 79.

160.    Even though Congress did not "other indication of the speed with which it expects the agency to proceed" for F nonimmigrant visas, the Department's regulations provide clear guidance. *Desai v. United States Citizenship & Immigration Servs.*, Civil Action No. 20-1005 (CKK), 2021 U.S. Dist. LEXIS 53325, at *10 (D.D.C. Mar. 22, 2021).

161.    "In fact, 22 C.F.R. § 41.106 expressly requires that consular officers process nonimmigrant visa applications '*properly and promptly*', while 22 C.F.R. § 41.121 mandates that consular officers 'either issue or refuse' a completed visa. *See* 22 C.F.R. § 41.106 (emphasis added); 22 C.F.R. § 41.121(a); cf. 22 C.F.R. § 41.121(c) ("If the ground(s) of ineligibility may be overcome by the presentation of additional evidence [...] a review of the refusal may be deferred for not more than 120 days." *Am. Acad.*, 463 F. Supp. 2d at 421.

162.    This timeline correlates with the first and second *TRAC* factors. Moreover, "reasonable time for agency action is typically counted in weeks or months, not years." *Am. Rivers & Idaho Rivers*, 372 F.3d at 419.

163.    Plaintiffs' human welfare and career are "at stake" in this case and prejudice from delay here is unconscionable and irreversible—Plaintiffs may squander their career and academic opportunities as discussed in TRAC factors Three and Five. 750 F.2d at 80.

164.    Defendants, although neglecting Plaintiffs' visa adjudications, have admittedly continued to process nonimmigrant visas for other categories as discussed in the fourth TRAC. *Id.*

165.    Defendants' blatant disregard for the time-sensitive nature of the visa application shows—although not needed to satisfy the TRAC analysis—that Defendants' acts with impropriety in creating "agency lassitude." *Id.*

166.    The Department has failed to adjudicate F and J nonimmigrant visas for the Plaintiffs within a reasonable time.

167.    Defendants' refusal to adjudicate visas is not authorized by any governing law and is arbitrary, capricious, an abuse of discretion, and in violation of the law.

168.    Pursuant to the APA, a court may compel agency action "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

169.    Plaintiffs were harmed and will suffer further irreparable harm by these unlawful acts.

## COUNT III

**(Violation of the APA, § 706(2)(A) and (D) Defendants' Policy to Misuse §221(g) to Throttle Issuance of Visas)**

170.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

171.    Defendants have unlawfully attempted to satisfy their duty to provide final

adjudications by issuing non-final decisions under §221(g).

172.    Specifically, §221(g) includes mandates that "[n]o visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law…" 8 U.S.C. 11201(g).

173.    What §221(g) does not include is discretion for Defendants to refuse nonimmigrant visa applications based upon information that was not requested prior to the interview.

174.    Plaintiffs were harmed by the Defendants' decision to use non-final §221(g) decisions to satisfy their duties to provide final visa adjudications.

## COUNT IV

### (Mandamus Act, 28 U.S.C. § 1361)

175.    Plaintiffs incorporate and re-allege the foregoing paragraphs as though fully set forth herein.

176.    Under 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

177.    A mandamus plaintiff must demonstrate that: (i) he or she has a clear right to the relief requested; (ii) the defendant has a clear duty to perform the act in question; and (iii) no other adequate remedy is available. *Liberty Fund, Inc. v. Chao,* 394 F. Supp. 2d 105, 113, 2005

U.S. Dist. LEXIS 22382, *19; *see also Patel*, 134 F.3d at 933 (duty to adjudicate a visa application).

178.    Plaintiffs clearly meet all three of these criteria. *See* e.g., *Nine Iraqi Allies*, 168 F.Supp.3d at 291-92 (holding the doctrine of consular non-reviewability did not apply where plaintiffs' visa applications were not formally refused but were held in "administrative processing"); *see also Patel*, 134 F.3d at 932-33 (affirming the granting of mandamus relief where plaintiff's application had only been provisionally refused); *Maramjaya v. United States Citizenship & Immigration Servs.*, Civil Action No. 06-2158 (RCL), 2008 U.S. Dist. LEXIS 124170, at *11 (D.D.C. Mar. 26, 2008) (holding that the doctrine of consular non-reviewability did not apply when the case had not procedurally progressed to the point where consular immunity would bar judicial review).

179.    Defendants have a duty to adjudicate Plaintiffs' visa applications in a timely manner pursuant to 5 U.S.C. § 706(1) and 5 U.S.C. §§ 706(2)(A) and (D).

180.    Defendants have a clear non-discretionary duty to adjudicate F-1 nonimmigrant visa applications and issue visas to Plaintiffs who are eligible to receive it and not inadmissible under 8 U.S.C. § 1182(a). *See* 8 U.S.C. § 1202(e); 22 C.F.R. § 41.121(a); 9 FAM 403.7-3, 403.10-2(A); *Am. Acad.*, 463 F. Supp. 2d at 421; *see also Patel*, 134 F.3d at 932.

181.    Defendants are in breach of their duties to Plaintiffs by unlawfully withholding and unreasonably delaying the adjudication of F nonimmigrant visa applications.

182.    A writ of mandamus is necessary because the Plaintiffs are entitled to final adjudication of their respective F and J nonimmigrant visa applications by the Defendants.

183.    Because there are no other adequate remedies available, mandamus is appropriate. *See* 5 U.S.C § 704.

184.    This Court has the power to compel these officers to perform their expressly defined duties, and Defendants owe the performance of such duties to the Plaintiffs.

185.    Defendants have a clear, non-discretionary, and mandatory duty to adjudicate Plaintiffs' nonimmigrant visa applications. There is no legal bar to doing so. Accordingly, Plaintiffs have a clear and indisputable right to have the visa application adjudicated.

186.    No alternative remedy exists to compel action by the Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court grants them the following relief:

A.    Declare that Defendants' delay in adjudicating Plaintiffs' F visa applications is unreasonable and violates the INA and applicable statutes, regulations, and agency guidance, and that Plaintiffs are entitled to a prompt adjudication of the visa application pursuant to the Declaratory Judgement Act 28 U.S.C. § 2201;

B.    Issue a writ of mandamus compelling Defendants and those acting under them to perform their duty to adjudicate Plaintiffs' applications within 21 days of the order pursuant to the Court's mandamus authority under 28 U.S.C. § 1361;

C.    Issue an order compelling Defendants and those acting under them to perform their duty to adjudicate Plaintiffs' nonimmigrant visa applications within 21 days of the order pursuant to the Administrative Procedure Act;

D.    Enjoin Defendants and those acting under them from any further unreasonable delay in adjudication of Plaintiffs' pending visa applications;

E.    Retain jurisdiction over this action to monitor and enforce Defendants' compliance with all orders of this Court;

F.    Award reasonable attorney fees and costs pursuant to the Equal Access to Justice

Act, 42 U.S.C. § 1988, 5 U.S.C. § 504, 28 U.S.C. § 2412 and any other applicable law; and

G.    Grant any and all further relief this Court deems just and proper.

Respectfully submitted on this 12th day of May 2025.

/s/ Seyedehelham Hassanisamereh
U.S. District Court Bar ID #90024704
Hassani Law Firm
1111 Montrose Dr
South Charleston, WV 25303
Tel: +1 (336) 457-2169
Email: Info@hassanilaw.com

*Attorney for Plaintiffs*